Our first case on our call today is Agenda No. 7, Consolidated Cases 131, 365, 131, 506, Amy Stewart v. The Honorable Stephen J. Rosenblum. Now, I understand that the parties, and we can understand this is somewhat unusual, but you've come to an agreement as to how to divide your time, I understand. Counsel, for the appellant, petitioner, Ms. Cohen, you will have a normal amount of time, a lot of time, but you also have an additional five minutes for rebuttal, correct? That's correct, Your Honor. Okay. And as for the two respondents, again, both of you will be splitting up your time 15 minutes for each. Is that correct? That's correct. That's your group? All right. Very good. Then if you're prepared to proceed, counsel for the petitioner. Good morning. May it please the Court, Assistant Public Defender Rebecca Cohen on behalf of Petitioner Appellant Amy Stewart. This case concerns the authority of judges to sue a sponte, ignore statutes, and detain criminal defendants for merely missing court dates, not because they are dangerous or committing new crimes. Acting on his own motion and without holding an evidentiary hearing, the Honorable Stephen J. Rosenblum of the Circuit Court of Cook County revoked Ms. Stewart's pretrial release for missing several court dates, mostly in another courtroom. He did this even though the Pretrial Fairness Act, which I'll call the PFA, the statute governing pretrial release, did not grant him the authority to do so. As a result, Ms. Stewart has been illegally in jail for more than six months, as of today, 196 days, since November 7th of 2024. Allowing judges to flout the PFA by declaring it unconstitutional as applied undermines the PFA's goal to create a fairer detention system. If other judges throughout the state can similarly declare the PFA unconstitutional as applied to the criminal defendants before them, the result would be disparate treatment and more pretrial detention. It was an extreme act of responding to sue a sponte and declare the statute unconstitutional as applied. Circuit Court judges have many tools at their disposal to address failures to appear. In particular, the sanctions procedure in the PFA, which sets out the standards for having a sanctions hearing and sets out the penalties for missing a court date. The legislature balanced the policy considerations and determined that at most a 30-day jail sentence should be the penalty for missing a court date. It seemed that the trial court was concerned about basically being able to bring this case to a conclusion because of all of the failures to appear. Do you know whether or not there was any suggestion of using trial in absentia? Yes, there was a suggestion that a respondent use trial in absentia. But that was off the record, so it's not in the proceedings. And it was not, I don't believe it was discussed when we had a hearing on January 6th. But it was in my habeas petition that I filed on December 23rd, I think, which the respondent had read when he came to court on January 6th. My question too is probably off the record as well. What is the status of the case now? Yes, so Ms. Stewart is still in jail. She is completing a 90-day drug treatment program. The 90 days from that, there was a forgery conference on March 5th, 2025, at which that was the agreement. There would be a 90-day jail sentence and then she could enter a plea to two years, which is below the minimum for possession of a stolen motor vehicle. Is there any movement to resolution? She's doing well in the drug treatment. She could potentially flee the next court date, which is June 5th. Or there's some indication she might want to stay in the drug treatment to serve the entire amount that she would have to serve rather than going to prison. So she could get turnaround time and then just be released from the jail. Is that her decision, whether to stay in the program or not? It is her decision whether to stay in the program. I'm not sure what's going to happen on June 5th. I only have information from the trial attorney about what's happening. That's the information that the trial attorney gave to me this week. With regard to sanctions, the legislature balanced the policy considerations and determined that at most, a 30-day jail sentence should be the penalty for missing a court date. It's not the role of judges to rebalance those policy considerations because they think missing court is more serious than the legislature does. Trial courts can also use other conditions of pretrial release, such as electronic monitoring, to get a criminal defendant to come to court. A trial judge can use trial and abstention to try someone who doesn't appear in court. Trial judges have the inherent authority to hold someone in contempt. Respondent used none of these. Instead, he declared the statute unconstitutional as applied. In this argument, I will address the lack of statutory authority for Ms. Stewart's detention, this court's finding in Roe v. Raul that the PFA is facially constitutional and does not infringe on any inherent judicial authority to detain, and that respondents as applied challenged the PFA should be rejected where responding afforded Ms. Stewart very little due process, and used none of the tools available to him to address Ms. Stewart's failure to appear other than declaring the statute unconstitutional. The parties agree that there's no statutory authority to indefinitely deny pretrial release to Ms. Stewart. There's no authority under Section 110-6.1, that's the detention section of the PFA. State did not file a detention petition before January 6th. On that date, the state wasn't granted leave. On January 23rd, the state wasn't granted leave to file that detention petition, so there's never been a pending detention petition. As a result, there was no detention hearing, at which the state proved by clear and convincing evidence that the proof is evident or the presumption is great that Ms. Stewart committed a class 4 offense, and that no condition or combination of conditions could prevent her willful flight. She's not detainable under the safety standard because she's not charged with a crime. Counsel, how many times had she failed to appear before the judge decided that he was going to detain her? Yes, so in judge, in respondent's courtroom, she failed to appear on October 15th. That was the first court date that was up in the felony trial courtroom, and then the next court date is when he detained her. How many times in total? Before that, yes, I believe that there were four other warrants. So there was a warrant on October 15th, and there were four other warrants issued in the preliminary hearing program. There were also two notices to appear. So she didn't appear and they issued a notice, they didn't issue a warrant, so I believe that's it. How many times, counsel? Seven. Thank you. So as I was saying, she was not charged with a detainable offense under the safety standard under Section 110-6.1A1-7. So the only way that she could be detained through a detention petition is through willful flight. The state never filed a willful flight detention petition until after respondent declared the statute unconstitutional to apply it. Counsel, you've asked for relief in multiple ways. Do you have a preference? What do you want us to do? I'm asking that Ms. Stewart be released as soon as possible. I don't have a preference. What vehicle do you want us to do that for? Any of the vehicles available to this court. When I filed the habeas petition in December, it looked like it was going to be 100 days through the appellate court before there would be a resolution to the PFA appeal. And then there could be a PLA to this court. I didn't know how long it would last, so I wanted to file something on them as quickly as possible. And I decided to file a habeas petition in this court to get the case addressed as soon as possible. I believe Ms. Stewart is being illegally detained, and she should be released as soon as possible. Can I ask another procedural question? Sure. So we have, I think, four different claims here, or four different procedural devices. And I think that we're trying to figure out what all that means. Could I just ask a real basic question? Sure. The Supreme Court rule provides that when a statute is declared unconstitutional that it is a direct appeal to the Supreme Court. Instead, you filed under the Pre-Trial Fairness Act rule. Why didn't you file a direct appeal in this court? So I, trial counsel filed that 604H appeal. It was a little unclear on December 12th when the motion for relief was denied whether it was actually, he was declaring the statute unconstitutional as applied. On January 6th, a respondent clarified the record and tried to issue a ruling that could be under Rule 18, Illinois Supreme Court Rule 18. And so it was clear at that point that it was a constitutional question. You know, it might have been an error to go along with the 604H appeal in the appellate court rather than file it directly to the Supreme Court. I don't think we were quite aware that that's what was happening at that point. So I filed the habeas instead. So the record, if you look at the record, you're saying that there was no clear declaration of unconstitutionality until the petition for reconsideration? Judge Rosenblum declared it unconstitutional as applied. He didn't go through each of the requirements of Rule 18 on November 7th. He didn't do that on December 12th. He did that on January 6th. So after the motion for relief was denied and trial counsel filed a notice of appeal. So it was maybe an error on our part not to immediately bring it up. It is here now, and so this court can act. I don't—there's some question about whether the requirements of 604H have to be followed and whether all the issues in the motion for relief, all the issues that we raise here have to be in the motion for relief, not all the issues that are raised here are in the motion for relief. So to the extent that this court thinks there might be a forfeiture problem, it has other alternatives for addressing her release through habeas. As to whether there was any statutory authority to revoke Ms. Stewart, there was none under Section 110-6. She had—when she appeared before Judge Rosenblum on November 7th, she did not have another pending Class A misdemeanor or felony case, which is the only basis to revoke in the Pretrial Fairness Act. And she was charged several times with possession of a controlled substance every time the state dismissed those charges. And again, there was no authority to order more than a 30-day jail sentence under 110-6ENF, the sanctions provisions, which limits jail to 30 days. That's the maximum you could have. To the extent that the parties are asking—well, this court, the appellate court, has addressed whether violations of conditions of release can be used to either revoke pretrial release or to detain someone. Those cases are People v. Barner and—cited in my brief—and People v. Ferris, which is 20-24-LF-240-745. In Barner, this court—the state filed a petition to revoke based only on a failure to appear, and the circuit court granted that petition to revoke. The appellate court reversed, saying you can't file a petition to revoke based only on a failure to appear. In Ferris, there were multiple curfew violations that were the result of— that were violations of conditions of pretrial release. The state filed a detention petition based on those, and the appellate—the circuit court granted that the appellate court reversed, saying you can't file a detention petition based on non-criminal violations of conditions of pretrial release. So, there's case law to support the statutory arguments that there's no authority to hold Ms. Stewart, you know. This court has already decided that the PFA is facially constitutional on separation of powers grounds and Roe v. Raul. That's all of your case. You address the issue of whether the pretrial fairness act unduly infringes on any inherent judicial authority to detain, and you determine that it does not. So, if this is a facial challenge, then Ms.—then the findings of respondent should be reversed, and this court should release Ms. Stewart. Even under an as-applied challenge, the—this—what respondent did here fails because his allegations that her failure to appear was interfering with his docket are just not correct based on the record before us. On October 15th, she didn't appear in court. He issued a warrant. That was a half-page transcript. Criminal defendants miss court dates all the time. It is not unusual for them to miss court dates. Judges are used to issuing warrants, and that's what he did in this case, and then she appeared in court. He did not—at no point was it ever—were any other things tried before a respondent detained Ms. Stewart. There were no prior petitions for sanctions, even though she missed court numerous other times. She had very few conditions of pretrial release. She had level one supervision a couple of times. She sometimes had no conditions of pretrial release other than to show up to court. So, it's not the case that modifications of conditions of pretrial release were tried. They weren't. He responded barely held a hearing about whether the statute was unconstitutional as applied. He minimally heard some mitigation from the defense counsel. He heard the facts of the case. He heard her background. He went through Odyssey. The same information you guys have, he went through, and then he decided he was not going to release her. He didn't look at any other tools within the statute. He didn't look at any other tools that he had as a judge to try her on abstention, to use contempt. This was an egregious violation of Ms. Stewart's rights. She's illegally in jail. We're asking that you release her, and if you agree with the state's position that it should be remanded back for a sanctions hearing, we'd ask that you issue an order that says she can't serve any more time in jail because she served way more than 30 days. So, I'll reserve the rest. I'll be back for a while. Thank you. Counsel for the State. Thank you, Your Honor. I may please the court. I'm Assistant Attorney General Eric Levin on behalf of the people of the state of Illinois. The circuit court in this case declared that provisions of the Pretrial Fairness Act that limit the circumstances in which a circuit court can revoke a defendant's pretrial release are unconstitutional as applied to the facts of this case. The people agree with the defendant, although perhaps on narrower grounds, that that constitutional holding was improper, and we agree that this court should reverse the circuit court's order revoking the defendant's pretrial release and remand for the court to consider the people's motion for sanctions. This court has held time and again that a circuit court cannot declare a statute unconstitutional without conducting an evidentiary hearing and making relevant findings of fact. As I think all here agree, I think, the circuit court did not do that. And those requirements are not mere formalities. This court has explained that because of the nature of an as-applied constitutional challenge, it is not possible for a circuit court to declare that a statute is unconstitutionally applied to particular facts without knowing what the facts of that case are. And a court can't know what the facts of the case are without doing some sort of evidentiary hearing, making some sort of factual inquiry. So, for instance, here we do know some minimal facts. We know that the defendant missed, I think, seven court appearances. In fact, we know that over the course of 11 months, she did not voluntarily appear a single time. And so we are entirely sympathetic with the circuit court's concerns here. But what we don't know is why the defendant missed court on all these occasions. Was she hospitalized, as she claimed during one hearing? Does she have a drug problem, which I think we now know could be the case. Those factors I'm struggling with, unconstitutional as applied. I'm not quite sure I understand what the judge was trying to say here. Why is it necessary to understand why the defendant did not appear on those dates if the court is saying the basis of the unconstitutionality is a limitation on its inherent power? Correct? Isn't that what the basis is? Correct. And I think it's important to step back to Roe v. Raul. So this court in Roe v. Raul held that on its face, the pretrial fairness act, including the provisions limiting a circuit court's discretion to deny or revoke pretrial release, are not unconstitutional. They comport with, among other things, the separation of powers principles. And so the court explained that, actually let me step back one step further. In Hemingway, the case from the mid-70s, this court recognized an inherent authority of trial courts to deny or revoke pretrial release in certain limited circumstances. One of which being when it was evident that no other options would ensure the defendant's appearance at trial. And in Roe v. Raul, this court held that the pretrial fairness act, including the provisions limiting that authority to deny or revoke pretrial release, did not unduly infringe on the circuit court's inherent authority. And it doesn't infringe on it because it regulates how a trial court employs that authority. And so, for instance, here the pretrial fairness act gave the circuit court many options to address the defendant's repeated failures to appear. In addition to the provision allowing for the trial court to incarcerate the defendant for up to 30 days, I think even more importantly, the pretrial fairness act allowed the court to modify the conditions of release. And we think that's what should have happened here. And it should have happened much earlier, in fact, than it did happen. The defendant repeatedly, and again, this was not respondent's fault. We acknowledge the case was not in front of the respondent earlier on. But the other trial court judges, you know, in the busy preliminary hearing courtroom, repeatedly released defendant every time after she was arrested on the same very minimal conditions. Essentially, level one supervision, which it's my understanding means report or check in with the pretrial services officer once a month, and then appear in court. And that was essentially it. The courts never tried to sort of, you know, ratchet up those conditions to address the defendant's problems with appearing in court. And it's obvious she has a problem appearing in court. It's tough to say that that's evidence of willful flight because she's continually arrested essentially in the same place. She's not fleeing, but she seems to have a drug issue. The pretrial fairness act would have allowed the court to mandate rehabilitative services, including drug treatment, whereas here that treatment would have been directly tied to her risk of non-appearance. The court could have moved up to levels two or three supervision, which, again, it's my understanding, requires more frequent check ins with the pretrial services officer, drug testing, home supervision, electronic monitoring. There are a host of options available to the court under the pretrial fairness act. And the trial court here simply, without knowing the reasons why, without hearing from the pretrial services officer about whether the defendant had been checking in as required, without knowing the defendant's work situation, living situation, without a pretrial risk assessment, statutorily required, but I don't think was done in this case, and without sort of getting to the bottom of why the defendant was not showing up, it was impossible for the trial court to make the determination that none of the options available to it under the PFA would be adequate. And without being able to make that determination, it's impossible for the trial court to say that these limitations on its authority, which are otherwise constitutional under Roe. Was there ever a pretrial report prepared in this case? Not to my knowledge, no. I could not find one in the record. Counsel, I'm still struggling with the mechanism by which we grant relief in this case. And first off, I wonder, with respect to the 604 appeal, has this issue been forfeited with respect to the 604 appeal? Your Honor, that's a complicated question because the case is in front of this court, both under 604 and 603. I do think probably the issue, in fact, has been waived. That's the language of 604H. We've not raised a waiver argument. And so this court has held the state can waive waiver, and we've done so here because we think we have a constitutional issue. The case is in front of this court under 603 as well, and we think it's important for the court to address that. And because there's that adequate direct appeal remedy for the defendant, the extraordinary relief sought under habeas or mandamus or this court's supervisory authority is just simply not necessary. I think the court can resolve this under the normal direct appeal process, under Rule 604H, and it can remand to the circuit court, again, as I say, to conduct a hearing after sanctions petition. I will note, we agree, I agree with my friend on the other side, that at the sanctions hearing, the circuit court could not impose additional jail time. But it would be important for the circuit court to be able to modify the conditions of the defendant's release, including keeping her on the drug treatment program that she appears to be doing very well in. And so are you agreeing that she should be released immediately, or she would still be held while this goes back down and we have a new hearing? Well, I think if this court were to order that the revocation was improper, I think it would then go back to the sanctions hearing. I do think she would have to be released at that point. I don't think there would be any basis to hold her anymore. It does sound like, from my friend on the other side, and I'm not familiar with this personally, but it does sound like the case is nearing a conclusion. So it does appear there might be a plea soon. I can't speak to that. But would it be appropriate for us to put in our decision that she's to be released immediately, or do we wait until it goes back for the hearing? We would have no objection to the court ordering her to be released immediately. We agree that she's now been in the county jail for, I think, about six months, when the sanctions provision only allows for up to 30 days. So, yes, we agree that if the court agrees with us that the revocation order was an error and has to be reversed, yes, I think the court should order that she be released and that the sanction hearing be conducted. At this point, if we follow through with what you just described, could the court modify the release order to impose additional conditions like electronic monitoring? Yes, absolutely. And the state, I assume, would argue for that. Drug treatment, we think, should be mandated. At the very least, much more frequent check-ins with pretrial services. I think the circuit court would want to hear from the pretrial services office to get a recommendation about what the pretrial services office thinks. But I can certainly imagine some sort of home supervision and electronic monitoring being appropriate. And you would want the court to speak to the circuit court's lack of authority to do what it did in this case? Yes, Your Honor. We would want the court to, again, reiterate what it's held numerous times, which is that a court cannot make a declaration of unconstitutionality as applied without conducting an evidentiary hearing and knowing the facts. So, again, in Roe v. Raul, this court held that the PFA, and in particular these limitations on a circuit court's authority to deny or revoke pretrial release, do not violate separation of powers principles. They do not unduly infringe on whatever inherent authority a court has to detain. Because they essentially regulate the manner in which the court exercises that authority. Now, it's not impossible that there could be some circumstances, perhaps, where it's applied to certain very unique circumstances in a case. What kind of facts? Well, to be honest, Your Honor, I'm not sure. And I don't know if there really could be a finding that this statute is unconstitutional as applied. But I think the court doesn't have to answer that here, because it's clear that the court couldn't have even made that finding. And as I say, we don't know exactly, really, all the circumstances here. But from what it looks like, I think it would be hard to say, even if we did know all the facts, that these limitations on the court's authority were unconstitutional here. Because, as I say, there were so many other options that the statute gives to certain courts. And I think that would probably be the case across the board. You know, it's hard to prove a negative, so I can't really say that there could be no possible circumstances where maybe those limitations would infringe on the court's authority. But I think it would be very rare. And certainly that's not the case. Could you address one more procedural quirk here? Usually we see arguments about unconstitutionality of statutes as applied coming from the person whose rights have been violated. They allege their constitutional rights have been violated. That's not what's happening here at all. Correct? Correct, Your Honor. So this doesn't seem to fit in any of the boxes that we usually see of the kind of cases when the discussion is constitutionality and constitutionality is applied. Correct, Your Honor. And that goes to the fact that, again, here, this was the judge acting sua sponte. The people did not ask for revocation. The people moved for sanctions. The people recognized that that's what the statute allows and that's what the people sought to do. And so this was the judge acting sua sponte, again, without an evidentiary hearing. So I think those sort of go together. The lack of the evidentiary hearing sort of relates to the separate doctrine of constitutional avoidance where the courts explain that finding that a statute is unconstitutional is a last resort, not a first resort. And here the circuit court sua sponte went that route first, and we think that was improper. So if there are no further questions, again, we would ask the court to vacate the circuit court's finding of unconstitutionality, reverse the order revoking defendant's pretrial release, and remand for a hearing on the people's sanctions petition. Thank you, Mr. Constantine. Counsel to the respondent. Good morning, Your Honors, Madam Chief Justice, Justices of the Supreme Court, Counsel, and may it please the Court, I am Special Assistant Attorney General Alan Stolberg, and I represent the respondent in this matter, the Honorable Stephen J. Rosenblum. May I ask you this? Of course. Who are you? Now, I know who you are. You are here representing the judge. Yes. It's kind of unusual. Certainly in case law, when we talk about habeas, we talk about some of these other remedies, the cases have said that the judge in all of that is a nominal party. Here in the hearings, apparently in the transcript, the court said, the judge said, who's going to represent my interest? Does the judge have an interest in this case? Yes, Your Honor, and I recognize this is a very unusual scenario, but because of the consolidated cases, not the 604H direct appeal, but the original action under Rule 383 where he's a named respondent, he does have the right under the rules and under the precedent to be representative, to have his position identified to the courts. Just from my own prior experience in situations, there was a mandamus where I was involved in involving Judge Stralka, where Judge Stralka had representation fighting the state's attorney's petition for mandamus. So there is that experience that does exist. That's why Judge Rosenblum went through the AOIC office, sought the appointment of a representative. So I'd like to begin, though, with an answer, with one clarification of facts to Justice Cunningham's question. There were actually eight times that Ms. Stewart failed to appear, not seven. There were five warrants that were issued, including the one issued by Judge Rosenblum on October 15th. There were two notices to appear that were sent by the court when she failed to appear, and there was one additional date where she did not appear, October 1st, the last date before Judge Fairman, and the record indicates she did not appear on that date, but no notice to appear was sent. I just wanted to clarify that we're talking about eight dates instead of seven. And the reason why I think that's significant is because what this court held in Hemingway, what this court held in Roe v. Roe will, is that when a judge is satisfied that the evidence shows that a defendant will not appear in court, regardless of the conditions, when the evidence indicates that, the judge has the inherent authority to deny pretrial rulings. That was expressly held in Hemingway, that was the basis of the Hemingway decision, that was reaffirmed in Roe v. Roe will, and that was the basis of Judge Rosenblum's ruling. Because Judge Rosenblum... Do you feel that that gives an order to do it sua sponte when the state hasn't requested it? Yes, Your Honor, I believe it does. Because if it's the inherent authority of the judge, the judge has the ability to look at the case, decide whether or not he thinks that this case is going to be able to move forward. Will he be able to manage his staff and bring this case to justice, as he said? Will he be able to do so? He looked at this record. He determined in his authority as the judge that he would not be able to, and so he exercised his inherent authority as a judge. Is the judge able to do that without an evidentiary hearing? Well, Your Honor, I would disagree with my friends on this case. There was a sufficient evidentiary hearing. There was a hearing on the motion for sanctions that was filed by the state's attorney. That hearing elicited all the relevant facts of why she did not appear, whether or not she was subject to sanctions. The only question that was left for Judge Rosenblum to decide was what sanctions should impose. The record specifically says that he was granting the state's motion for sanctions, but he disagreed with the remedy. And so if you see on the record, I believe it's on page 16 of the supporting record, I may be wrong, but he specifically, the order of sign granting the sanctions, he added a new checkbox for what the relief would be, not the 30 days as identified by the statute, but the petitioner that Ms. Stewart would be detained. So he was granting the motion for sanctions. He had a full hearing on the motion for sanctions. If he's granted the authority to exercise inherent authority, doesn't that render the Pretrial Fairness Act optional? No, Your Honor. It does not. And the reason why is because, as Judge Rosenblum made very clear, he was looking at the very particular circumstances of this case. This is not a situation where every defendant immediately is subject to a finding of inherent authority overriding the statute. Did he make an effort to modify the conditions of the release in any way? No, Your Honor. He did not. There was no request or attempt to modify the conditions of release, but there's also no indication that any additional conditions of release would have solved the problem. Did he advise her about being tried in absentia? Yes, he did, Your Honor. So he admonished her in open court, and did he exercise any indication that he would move forward with that? No, Your Honor, he did not go forward. Because he says he needs to manage his docket. I mean, that's a tried and true remedy to do that for people that don't appear, correct? Yes. Trial absentia is available around me for people who don't appear for trial, but it is highly disliked. The case law seeks to avoid that as much as possible because trials in absentia are very difficult for the system, for the court, for the jury. One instance that many people don't realize is you cannot have a bench trial in a trial in absentia. So it would require scheduling for a jury trial, even though it is likely that most cases go to a bench trial. And so trials in absentia are highly disliked, highly disfavored. Courts do their best to try and avoid having them. That is why one of the reasons that the inherent authority of a judge is to detain somebody who they believe, where the evidence is sufficient, will not appear for trial, which is what happened in this case. Counsel, you know, when you find, when the trial court makes an applied finding regarding the constitutionality of this, doesn't he have a real important obligation to develop a full record so that we're not arguing about what it is that he relied on? Did he do that in this case? Your Honor, I believe he did. Give me some examples. So the record is clear. He went through. He said he believed that there had been four warrants in the case. He miscounted. There were five. He identified all the dates. He made a specific finding, which is factually accurate and is not contested, that Ms. Stewart never once appeared in court voluntarily. She missed every single court date unless she was arrested and brought to court in custody. Those are the findings that he made, those specific findings, and those were the factual findings that were the basis of his rule. The additional findings that counsel is suggesting, such as why Ms. Stewart may have failed to appear, yes, those are true, and he did offer Ms. Stewart the opportunity to demonstrate that. He said, if you have evidence of hospitalization, as she said, please bring it forward. None has been given. None is forthcoming. None was even raised in the motion to reconsider. But the case law, and I will direct this court to the Smith case that we cite in our brief, which involves a trial and absentia issue. In the Smith case, this court specifically held that there is no requirement for additional facts to hold somebody in absentia once you've established that they have not appeared. If they have not appeared and there's no indication that they're not being prevented from attending, that is sufficient factual demonstration to move forward with the trial and absentia. That's what happened here. There was sufficient factual demonstration that Ms. Stewart would not appear voluntarily in court, and that was why he exercised his inherent authority to detain her. So counsel spent a lot of time discussing the case law, excuse me, the statutes, and there is no dispute. Judge Rosenblum recognized from the start that under Section 110-6 and 110-6.1, he did not have the statutory authority to do what he did. But the case law has always said in Roe, in Hemingway, that when a statute unduly infringes on the inherent judicial authority, the judicial authority takes place. In this case, the statutes precluded Judge Rosenblum from exercising the inherent authority that this Court recognized in Roe, which is to detain a defendant who does not come to court. So my question earlier was about usually we see in an issue about constitutionality of a statute that there is a party who argues that their constitutional rights have somehow been infringed by the statute and, therefore, the statute is unconstitutional. Does the judge have any constitutional rights in this? He has constitutional authority. I don't want to say he has constitutional rights. He has constitutional authority that he is entrusted to exercise, that he is expected to exercise in a timely, diligent, appropriate manner. In his determination, he was unable to do that here, and that's why he was allowed to make the ruling that he did. I would direct you to the Flores case that we cite in our case, where a similar ruling was made by a certain court judge involving a trial in absentia, where the statute required the judge to wait two days before he could continue with the trial after the defendant was done. And the trial judge ruled that I don't have to do that. That interferes with my inherent authority. I'm declaring it unconstitutional. It came up to this Court. This Court said you didn't have to find it unconstitutional because we can construe the statute as directory. It didn't have to be read as mandatory. But we can't do that in this case. In this case, the statutes are clear. They are mandatory. They preclude any resolution of allowing a defendant like Ms. Stewart to be detained for her failure to appear. Isn't this case, though, different from Flores? In Flores, didn't the defendant disappear mid-trial? Yes, Your Honor, that is correct. And so in this instance, this is just the situation, not to minimize it, where the person failed to appear, but there was still a mechanism by which the person could be tried. Yes. Yes, Your Honor. I'm not saying that Flores is identical or is on all fours, but the procedural posture is similar in the sense that a trial judge is confronted with a statute that appears to be mandatory that precludes him from exercising what he believes he needs to do to manage his dockets, and he declared it unconstitutional. And this Court agreed with that judge in Flores, but for the fact that it was able to construe the statute as directory. As I said, there's no dispute here. The statutes are mandatory. They cannot be read as directory in any way. There cannot be an opportunity under the statutes for the judge to exercise the inherent authority that has been recognized by this Court. What about the argument that what is driving the judge's decision is concern about managing the docket, moving this case towards trial? How do we factor in the fact that she's in custody and has continued to drift? There's been no trial date set. It's just drifts. That sense of urgency seems to have dissipated once she went into custody. I can speak a little to that. As you stated earlier, the motion is off record. As counsel stated, the defendant, once she was detained, was given the opportunity to participate in the Thrive Program at Cook County Jail, which is a drug rehabilitation program specifically for female detainees. That program requires a minimum of a 90-day period of completion. She did agree to go into that program. Because that program is continuing, I believe, as counsel stated, the next court date is June 5th. It may continue on a little bit more for her to finish all of the protocols within the program. The goal is and the understanding is, as I understand it, is that there's hopes that there will be a redisposition once she completes the Thrive Program. So she has to be detained to be eligible? To be in this particular program. I imagine there are other drug rehabilitation programs available for defendants who are not in custody. But this program does require detention in the Cook County Jail because it is a special program specifically identified for female detainees. As Judge Rosenblum said in the transcript that we supplemented the record with, in his experience, this is the best program available. I have heard similar things from other parties involved in the circuit. So if the parties enter a negotiated disposition, does this appeal become moot? Yes, I would say it becomes moot. That raises an important question as to whether or not there's a mootness exception available, whether or not this is one that would fall within either the public interest exception or the capable repetition of a review exception. That is something that would have to be addressed if and when it were to become moot. I can't predict if there will be an agreed disposition. I can't predict what will actually happen. But certainly if there is a redisposition and she is no longer being detained pending charges, then it would be rendered moot. If there are no further questions, Judge Rosenblum would simply ask that this court deny the original action, reject the petition for habeas, mandamus of prohibition, or supervisory order because in his estimation, his acts were fully authorized by Illinois law, in particular this court's decisions in Hemingway, Roe v. Roe, and all the other situations involving the inherent authority to manage court staff. Thank you. Thank you, Counsel. Counsel will reply. I first want to address Special Attorney General Alan Spellberg's argument that there was a full evidentiary hearing, there was a full sanctions hearing. Under Section 110-6E, there are standards set out on what has to be found in order to order sanctions. The state has the burden of proving by clear and convincing evidence that the defendant committed an act that violated the defendant's pre-trial release, that defendant had actual knowledge that the action would violate a court order, that the violation was willful, and that the violation was not caused by a lack of access to financial and monetary resources. It's clear from the hearing that occurred on November 7th of 2024 that not all of these findings were made. Judge Respondent found that Ms. Stewart missed court dates, but he did not find that it was willful. He did not find that it was not caused by a lack of financial resources. She did indicate in court that she had been hospitalized for some of the missed court dates, and there were no questions to her about where she was hospitalized, how long was she hospitalized, why was she hospitalized. Instead, the judge immediately went to declaring the statute was unconstitutional as a fine and that he was going to hold her. That was improper and an egregious violation of her rights. Judge Rosenblum could have held a trial in absentia. His concern was that he would have difficulty holding a trial, but he did not consider that before declaring the statute unconstitutional. Even though declaring the statute unconstitutional as a plaintiff's issue, that should be a last resort for judges. It's a very serious thing to declare a statute unconstitutional. We want laws to be followed. We want them to have staying power. This case was already decided by you. This court already decided in Roe v. Raul that the PFA did not violate separation of powers, that it did not unduly infringe on any inherent judicial authority. This court in Roe v. Raul considered heavy way and determined that judges don't solely have inherent authority to detain. They have concurrent authority with the legislature. It was improper of respondents to ignore the legislature's standards and procedures and due process protections that are in the Pretrial Fairness Act and just declare it unconstitutional as applied. Ms. Stewart is in the Thrive Program. She did not enter that program until March of 2025. That was almost four, four and a half months after she'd been in detention. The reason that detention is disfavored is that often it results in people entering into pleas that they may not have been entered into because they have difficulty finding their witnesses and making their defenses. Being in detention often results in plea deals. Just because she's doing well in this Thrive Program does not mean that this court should keep her in detention when she's been illegally detained for more than six months. Could she continue in the treatment program if she were released? I do not believe she could continue with the Thrive Program if she were released. But as the Attorney General indicated, she could do a different drug treatment program as a condition of her release. So you said earlier that she's doing well in that program. Somebody said it. So you would want to take her out of it and put her, start her in something new? If she can't continue in the program if she's released? I mean, are you asking for relief that may not be beneficial to your client? It is beneficial for our client not to be illegally in jail. So we're asking that she be released. Even if she can't complete her drug treatment program that you say is working pretty well? Yes. We'd ask that if she does agree to a plea and this case is resolved, we'd ask that this court address that anyway under the exceptions to blue list, under the public interest exception specifically, so that this kind of event doesn't happen again, so that circuit court judges are aware that they cannot just ignore the pretrial fairness act and act essentially rogue outside the confines of the statute. So with that, I'd ask for an order vacating the finding of unconstitutionality. I'd ask for an order ordering Ms. Stewart's immediate release. Thank you. Thank you all very much. This case, agenda number 7, 131, 365, 131, 506, Amy Stewart v. Hon. Stephen J. Rosenblum will be taken under advisement. Thank you all for your spirited arguments.